IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROBERT JOHN KEENO, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| | )   CIV-07-408-HE |
| v. | ) |
| | ) |
| JANICE MELTON, Warden, | ) |
| | ) |
| Respondent. | ) |

REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, has filed this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Petitioner is challenging his convictions for Manufacturing Controlled Dangerous Substance (methamphetamine) and Conspiracy to Manufacture Controlled Dangerous Substance (methamphetamine) entered in the District Court of Comanche County, Case No. CF-2004-378. For these convictions, Petitioner is serving two, concurrent 15-year terms of imprisonment. Respondent has responded to the Petition and filed the relevant state court records, and Petitioner has filed a reply. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Petition be denied.

I. Background

Petitioner was charged with the offense of Unlawful Possession with Intent to

Distribute a Controlled Dangerous Substance (methamphetamine) in Comanche County District Court, Case No. CF-2004-378. On August 30, 2004, a preliminary hearing was conducted on this charge, and at the conclusion of the hearing the prosecutor requested that Petitioner be bound over on the charges of Manufacturing Controlled Dangerous Substance (methamphetamine) and Conspiracy to Manufacture Controlled Dangerous Substance (methamphetamine). The request was granted by the district court over Petitioner's objection, and Petitioner was advised he was being bound over for trial on two counts, including count one charging him with Manufacturing Controlled Dangerous Substance and count two charging him with Conspiracy to Manufacture Controlled Dangerous Substance. Following this hearing, the prosecution filed an amended information setting forth the two new charges.

A jury trial was conducted on the charges in the amended information on May 16 - 18, 2005. At trial, the prosecution presented as its chief witness Mr. Burris who testified that he and Petitioner were in a "drug-type" relationship and had discussed methamphetamine and making methamphetamine. Mr. Burris testified that he and Petitioner were methamphetamine users, that he had manufactured methamphetamine with Petitioner in Cyril, Oklahoma, that Petitioner bought psuedo-ephedrine pills, a precursor ingredient used in the manufacture of methamphetamine, and that Petitioner put the pills and tools needed for manufacturing methamphetamine in a pick-up truck which Mr. Burris then drove to the house Mr. Burris shared with his girlfriend. Mr. Burris also testified that on the day of their arrest he delivered an ounce of methamphetamine to an individual at Petitioner's direction,

that he received $800.00 in exchange for the drug, that he gave the money to Petitioner, and that he saw Petitioner put this money in Petitioner's wallet. Mr. Burris further testified that he bought batteries and ether and picked up Petitioner on the day of their arrest and brought Petitioner to the garage where the drug manufacturing equipment and ingredients were located, and that the two of them and a third individual began the process of manufacturing methamphetamine until they were interrupted when police officers discovered them in the garage. The arresting officers testified that they were on foot looking for reported car burglars in the area when they smelled ether coming from a lighted garage where they discovered Petitioner and Mr. Burris and the methamphetamine manufacturing lab. Although Petitioner testified that he had gone to Mr. Burris's residence only because Mr. Burris had asked him to go fishing, the jury convicted him of both offenses. At the conclusion of the trial, the jury found Petitioner guilty of both counts and recommended a sentence of 15 years of imprisonment for each count. Petitioner was sentenced by the district court to two, consecutive 15-year terms of imprisonment consistent with the jury's recommendation. In August 2005, in response to Petitioner's request for judicial review of the sentences, the district court modified Petitioner's sentences to provide that the 15-year sentences for the convictions would run concurrently rather than consecutively.

Petitioner appealed the convictions to the Oklahoma Court of Criminal Appeals ("OCCA"). In his appeal, Petitioner asserted five grounds for relief. Petitioner asserted that (1) his constitutional rights were violated because he was not given a second preliminary hearing after the prosecution was allowed to amend the information and charge Petitioner

with two new charges, (2) the evidence was insufficient to support the convictions because the accomplice's testimony was not corroborated; (3) Petitioner was prejudiced by the trial court's failure to instruct the jury that the testimony of accomplices must be corroborated; (4) the trial court erred by instructing the jury that possession of methamphetamine was a lesser-included offense of manufacturing methamphetamine; and (5) Petitioner was denied his Sixth Amendment right to effective assistance of trial counsel. Response, Ex. 1.

The State responded in opposition to each of Petitioner's claims. Response, Ex. 2. The OCCA affirmed the convictions and sentences in an unpublished summary opinion. Response, Ex. 3 (Keeno v. State, Case No. F-2005-609 (Okla. Crim. App. Aug. 25, 2006)). With respect to Petitioner's first ground, the OCCA found that "an additional preliminary hearing was not warranted due to the fact that the amended charges were not substantially different from the original charges." Response, Ex. 2, at 2. Concerning Petitioner's second ground for relief, the OCCA found there was "ample corroboration of the accomplice's testimony in the record" and that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. As to the third ground, the OCCA concluded that although the trial court should have instructed the jury that the accomplice's testimony must be corroborated, there was no fundamental error demonstrated by Petitioner because "the accomplice's testimony was substantially corroborated at trial." Id. The court further rejected Petitioner's claim of error concerning the instructions given to the jury, and the OCCA found Petitioner had not shown errors by counsel that were so serious as to deprive him of a fair trial and reliable result, citing Strickland v.Washington, 466 U.S. 668

(1984).

Petitioner has now timely filed his Petition for a Writ of Habeas Corpus raising the same claims he asserted in his direct appeal.

II. Standard of Review

With respect to Petitioner's constitutional claims asserted in his 28 U.S.C. § 2254 Petition, these claims were rejected by the OCCA in his direct appeal from the convictions. Therefore, habeas relief may be awarded only if the OCCA's adjudication of the same claims was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254 (d). This standard, which was adopted as part of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), directs the focus of judicial review to the result of the state appellate court's decision, not its reasoning. Saiz v. Ortiz, 392 F.3d 1166, 1176 (10th Cir. 2004), cert. denied, 545 U.S. 1146 (2005). Under this standard, federal courts reviewing federal habeas claims that have previously been resolved on the merits in state courts must apply a "level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams v. Taylor, 529 U.S. 362, 386 (2000)(quoting H. R. Conf. Rep. No. 104-518, p. 111 (1996)). A state court decision is "contrary to" established Supreme Court precedent if the state court either (1) reached a conclusion opposite to that reached by the Supreme Court on a question of law or (2) decided an issue differently than the Supreme

5

Court has on a set of materially indistinguishable facts. Id. at 405-406. The "state court decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions." Mitchell v. Esparza, 540 U.S. 12, 16 (2003)(*per curiam*). "[A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Id. (quoting Early v. Packer, 537 U.S. 3, 8 (2002)(*per curiam*)). A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 407. See Price v. Vincent, 538 U.S. 634, 640-641 (2003). With respect to the "unreasonable application" requirement, "it is the habeas applicant's burden to show that the state court applied [the Supreme Court case] to the facts of his case in an objectively unreasonable manner," not merely that the state court decision applied the Supreme Court case incorrectly. Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)(*per curiam*). "[W]hether a state court's decision was unreasonable must be assessed in light of the record the [state appellate] court had before it." Holland v. Jackson, 542 U.S. 649, 652 (2004)(*per curiam*)(citations omitted). The AEDPA also mandates that factual findings made by a state trial or appellate court are presumptively correct and may be rebutted only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

III. Failure to Hold Second Preliminary Hearing

Petitioner asserts in ground one of the Petition that his due process rights were violated when he was not provided a second preliminary hearing after the prosecutor's

6

request to amend the information was granted at the conclusion of the preliminary hearing. Petitioner raised this claim in his direct appeal. Although in his direct appeal Petitioner asserted that his "constitutional rights to due process were violated" by the trial court's failure to conduct a second preliminary hearing, it is clear from Petitioner's brief filed in the appeal that Petitioner was relying on Oklahoma's Constitution, and not the federal Constitution, to support this claim. Petitioner argued that Oklahoma's Constitution prohibits the state from prosecuting a defendant for a felony without a preliminary hearing. Response, Ex. 1, at 5 (citing Okla. Const. art. II, § 17). Petitioner asserted that he was entitled to another preliminary hearing after the information was amended during the preliminary hearing because the charges appearing in the amended information were substantially different from the charge in the original information. As Petitioner argued in his appellate brief, "[t]he lack of a preliminary hearing on substantially different charges from the charges [sic] in the original Information violated Mr. Keeno's right to due process" under the state's constitution and court precedent. Response, Ex.1, at 9.

The OCCA rejected this claim and found that another preliminary hearing was not necessary because the amended charges were not substantially different from the original charge. The appellate court's decision was based entirely on state law. With respect to this conclusion, the OCCA cited four previous decisions by the court in Banks v. State, 43 P.3d 390 (Okla. Crim. App. 2002), Sadler v. State, 846 P.2d 377 (Okla. Crim. App. 1993), Reeves v. State, 818 P.2d 495 (Okla. Crim. App. 1991), and Webster v. Dist. Ct. of Oklahoma County, 473 P.2d 277 (Okla. Crim. App. 1970). None of these decisions relied on federal

7

law with respect to the issue of the defendant's right to another preliminary hearing after the amendment of charges.

The Supreme Court has held that "a judicial hearing is not [a] prerequisite to prosecution by information." Gerstein v. Pugh, 420 U.S. 103, 119 (1975). See Lem Woon v. Oregon, 229 U.S. 586 (1913)(no constitutional right to preliminary hearing); Snow v. Oklahoma, 489 F.2d 278, 279 (10th Cir. 1973)(holding there is no federal constitutional right to a preliminary hearing). Petitioner raises only issues of state law when he asserts state statutory requirements for holding preliminary hearings were violated. Without more, his claim is not cognizable in habeas review. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Nevertheless, once a state provides a preliminary hearing, counsel must be afforded at that hearing. Coleman v. Alabama, 399 U.S. 1 (1970). Petitioner has not shown that he was prejudiced in any way by the filing of the amended information and the lack of a second preliminary hearing. Petitioner was adequately informed of the charges, the witnesses, and the evidence against him at the preliminary hearing, and he was represented by counsel. Accordingly, no fundamental unfairness resulted from any technical error in the Petitioner's pretrial proceedings or the failure to hold a second preliminary hearing after amendment of the charges. Sullivan v. Bruce, No. 02-3119, 2002 WL 1813889 (10th Cir. Aug. 8, 2002)(unpublished opinion)(holding no constitutional violation occurred in connection with failure of trial court to hold second preliminary hearing after the filing of an amendment to charges absent showing of prejudice or inadequate notice of charges, witnesses, or evidence against petitioner) .

IV. Sufficiency of the Evidence

In his second ground for habeas relief, Petitioner urges that the evidence presented at his trial was not sufficient to prove his guilt beyond a reasonable doubt. Petitioner argues in support of this claim that there was no testimonial evidence from another individual to corroborate the state's witness's testimony concerning the offenses. The OCCA rejected this claim based on its finding that "ample corroboration of the accomplice's testimony" was shown in the trial record and that there was sufficient evidence presented at trial to support the convictions. Response, Ex. 3, at 2.

Judicial review of Petitioner's habeas challenge to the sufficiency of the evidence presented at his trial to support his convictions "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 506 U.S. 390, 402 (1993). For habeas review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996)(quoting Jackson). Both direct and circumstantial evidence is considered in determining whether evidence is sufficient to support a conviction. Lucero v. Kerby, 133 F.3d 1299, 1312 (10th Cir.), cert. denied, 523 U.S. 1110 (1998). In applying this standard, the court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'" Messer, 74 F.3d at 1013 (quoting

Grubbs v. Hannigan, 982 F.2d 1483, 1487(10th Cir. 1993)).

In this case, the sufficiency of the evidence inquiry is based on Oklahoma law which defines the substantive elements of the crime. Jackson, 443 U.S. at 309, 324 n.16.   In Oklahoma, the elements of a conspiracy are "(1) an agreement to commit the crime(s), and (2) an overt act by one or more of the parties in furtherance of the conspiracy, or to effect its purpose." McGee v. State, 127 P.3d 1147, 1149 (Okla. Crim. App. 2006).  The conspiracy may be proved by circumstantial evidence, although there must be at least two parties who have agreed to commit a crime. Id.  The elements of the drug manufacturing offense are the knowing and intentional manufacture of the controlled dangerous substance, in this case, methamphetamine.

Generally, in Oklahoma, the "testimony of an accomplice must be corroborated with evidence, that standing alone, tends to link the defendant to the commission of the crime charged." Sadler v. State, 846 P.2d 377, 383 (Okla. Crim. App. 1993).  However, "[a]ll that is required is for there to be at least one material fact of independent evidence that tends to connect the defendant with the commission of the crime," and "[c]ircumstantial evidence can be adequate to corroborate the accomplice's testimony." Id.

A law enforcement officer testified at Petitioner's trial that he smelled ether coming from a lighted garage in a Lawton neighborhood and that ether is a chemical used in the manufacturing of methamphetamine. The officer testified that the state's witness, Mr. Burris, and Petitioner were found in the garage and that Petitioner was crouched down behind some items. The officer observed what appeared to be a methamphetamine manufacturing lab on

the floor of the garage. Petitioner and Mr. Burris were arrested at that time. Trial Transcript, Vol. I, at 166-175. Another law enforcement officer testified to the same events. Trial Transcript, Vol. I, at 188-191. The officer identified Petitioner and Mr. Burris as the individuals in the garage who were arrested that night. Trial Transcript, Vol. I, at 197-198. An officer testified Petitioner's wallet was recovered from the garage and that the wallet contained a receipt with Petitioner's name on it. Trial Transcript, Vol. I, at 195-196. There was also testimony presented at trial concerning the contents of the methamphetamine manufacturing lab and drugs discovered in the garage and adjoining residence, including three bags of white powder containing psuedo-ephedrine (a precursor ingredient), two "crank" pipes or glass smoking pipes, a plastic container containing methamphetamine, a plastic baggy-type container containing methamphetamine found under Petitioner's wallet, a glass jar with coffee filters inside containing psuedo-ephedrine, and a glass jar containing methamphetamine. Trial Transcript, Vol. II, at 127-134. A Lawton police detective testified that thirteen cases of psuedo-ephedrine were recovered from the garage following Petitioner's arrest. Trial Transcript, Vol. II, at 196. The officer also testified that in the garage was "a black bag with starting fluid and lithium batteries" in it as well as a "bucket with either [sic] cans in it and tubing coming out of it." Trial Transcript, Vol. II, at 197-198. During a post-arrest interview, Petitioner admitted that just before he was arrested he had put some trash in a plastic bag, handled a blender in the garage, and had picked up a jar containing lithium batteries and ether. Trial Transcript, Vol. II, at 183, 199-200. During his trial testimony, Petitioner admitted he had been in Mr. Burris's girlfriend's garage for about

two hours before he was arrested, that his wallet found in the garage contained $1,900.00 in cash, and that he and Mr. Burris used methamphetamine during that time period. Trial Transcript, Vol. III, at 13-14, 18-20. Petitioner admitted he had participated in bagging some trash in the garage. Petitioner also admitted that he had helped Mr. Burris "bleed off a few cans of ether," or "air out" cans of ether, in the garage immediately before the law enforcement officers arrived. Trial Transcript, Vol. II, at 232, 235; Vol. III, at 30.

There was substantial evidence presented at the trial which corroborated Mr. Burris's testimony at Petitioner's trial that he and Petitioner had agreed to manufacture methamphetamine and that Mr. Burris and Petitioner had begun to manufacture methamphetamine in the garage immediately prior to their arrest that night. Accordingly, there was sufficient evidence presented at the trial from which a reasonable jury could have found Petitioner guilty of the crimes of conspiracy to manufacture methamphetamine and manufacturing methamphetamine, and the OCCA's decision in this regard was not contrary to, or an unreasonable application of, the Supreme Court's clearly-established Jackson standard, nor was the OCCA's determination based on an unreasonable determination of the facts in light of the evidence presented at Petitioner's trial.

V. Jury Instructions

In grounds three and four of the Petition, Petitioner asserts that his due process and equal protection rights were violated by errors committed by the trial court in giving instructions to the jury. In ground three, Petitioner contends it was error for the trial court to fail to instruct the jury that the testimony of accomplices must be corroborated and that

this error denied him due process. In ground four, Petitioner contends it was error for the trial court to give an instruction on the offense of possession of a controlled dangerous substance. Petitioner raised these same claims in his direct appeal. Petitioner admitted in his appellate brief that he had not requested a jury instruction with respect to the testimony of an accomplice. However, Petitioner asserted that state law required the trial judge to instruct the jury that Mr. Burris was an accomplice and that corroboration of his testimony was necessary in order to convict Petitioner of the offenses. Petitioner asserted that he was prejudiced by the district court's failure to instruct the jury on the need for corroboration of accomplice testimony "because if the jury eliminated the testimony of Mr. Burris, the jury may have decided that there was insufficient corroboration to convict [Petitioner] of manufacturing and conspiracy to manufacture methamphetamine. Response, Ex. A, at 23-25.

With respect to the failure of the trial court to give a cautionary accomplice instruction, the OCCA determined that under Oklahoma law the jury should have been instructed that the witness Mr. Burris was an accomplice and that his testimony must be corroborated. However, the court further concluded that the district court's failure to give the cautionary accomplice instruction was not fundamental error because "the accomplice's testimony was substantially corroborated at trial." Response, Ex. 3, at 2.

Although Petitioner couches his claim in terms of a constitutional requirement that accomplice testimony be corroborated, "there is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them." Caminetti v. United States, 242 U.S. 470, 495 (1917). See Scrivner v. Tansy, 68 F.3d 1234, 1239 (10th Cir.

1995)("The Constitution does not prohibit convictions based primarily on accomplice testimony."), cert. denied, 516 U.S. 1178 (1996). In federal court, "[a] conviction may stand merely on the uncorroborated testimony of an accomplice." United States v. Magallanez, 408 F.3d 672, 682 (10th Cir.), cert. denied, 546 U.S. 955 (2005). Thus, Petitioner has not presented an issue of federal law cognizable in this habeas proceeding based on the trial court's failure to instruct the jury on accomplice testimony.

Moreover, "as a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law." Patton v. Mullin, 425 F.3d 788, 807 (10th Cir. 2005)(quotation omitted), cert. denied, __ U.S. __, 126 S.Ct. 2327 (2006). The giving of a cautionary instruction on accomplice testimony is not a constitutional requirement. Foster v. Ward, 182 F.3d 1177, 1193 (10th Cir. 1999), cert. denied, 529 U.S. 1027 (2000). Thus, Petitioner must show that "in the context of the entire trial, the failure to instruct the jury to carefully consider [the witness'] credibility as an accomplice 'had the effect of rendering the trial so fundamentally unfair as to cause the denial of a fair trial.'" Id.

The OCCA determined that Mr. Burris's testimony was sufficiently corroborated at trial to demonstrate that the accomplice's testimony was credible and therefore the absence of the cautionary accomplice testimony instruction was harmless error. Petitioner has not shown that the absence of the cautionary accomplice instruction rendered his trial so fundamentally unfair as to cause a denial of due process. Petitioner's defense counsel thoroughly cross-examined Mr. Burris, and Mr. Burris's testimony that Petitioner was an

active participant in the drug offenses was credible and consistent with other direct and circumstantial evidence presented at the trial. Petitioner has not shown that the OCCA's determination was contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Accordingly, Petitioner is not entitled to habeas relief concerning this issue.

Petitioner also contends he was denied due process by the giving of an instruction to the jury on the offense of possession of methamphetamine. Petitioner contends that possession is not a lesser-included offense of the manufacturing offense. In Petitioner's direct appeal, the OCCA found that "any potential error" from the giving of this instruction was harmless and did not affect the jury's verdict. The Supreme Court has not ruled that in noncapital cases a defendant is entitled to instructions only on the offenses with which he is charged. Rather, the Supreme Court has held that "if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis" and "[w]here a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed." Rose v. Clark, 478 U.S. 570, 579 (1986).

Petitioner was found guilty of the manufacturing offense, and he has not demonstrated that the giving of an instruction on the offense of possession of methamphetamine rendered his trial so unfair as to deny him due process. Petitioner admitted during trial that he possessed the methamphetamine found by law enforcement officers under his wallet in the garage where he was arrested. Petitioner's defense at trial was that he only possessed

methamphetamine and had not manufactured any methamphetamine. Thus, there was certainly evidence presented at the trial sufficient to support the giving of an instruction on the offense of possession of methamphetamine. Petitioner has not shown that the OCCA's determination was contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Accordingly, Petitioner is not entitled to habeas relief concerning this claim.

## VI. Ineffective Assistance of Trial Counsel

In his fifth and final ground for habeas relief, Petitioner urges that his Sixth Amendment right to effective assistance of trial counsel was denied. As support for this claim, Petitioner asserts that (1) his attorney failed to request another preliminary hearing after the prosecution was allowed to amend the information at the conclusion of the preliminary hearing and (2) his attorney failed to request a jury instruction on the requirement of corroboration of accomplice testimony. The OCCA rejected this same claim in Petitioner's direct appeal.

Evaluation of the effectiveness of Petitioner's trial counsel's assistance "requires a two-part inquiry. 'In order to prevail, the defendant must show both that counsel's representation fell below an objective standard of reasonableness, and that there exists a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Williamson v. Ward, 110 F.3d 1508, 1514 (10th Cir. 1997)(quoting Kimmelman v. Morrison, 477 U.S. 365, 375 (1986)). Counsel's performance is evaluated from the attorney's perspective at the time of the assistance, considered in light

16

of all the circumstances prevailing at that time, and indulging a strong presumption that counsel's conduct fell within the "wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. 668, 689 (1984).

With respect to Petitioner's contention that his trial counsel should have requested a second preliminary hearing after the charges against him were amended, the undersigned has concluded that no fundamental unfairness resulted from any technical error in the Petitioner's pretrial proceedings or the failure to hold a second preliminary hearing after amendment of the charges. Hence, Petitioner has not shown that his defense counsel's failure to request a second preliminary hearing was objectively unreasonable professional conduct or that his defense was prejudiced by counsel's failure to request a second preliminary hearing.

With respect to Petitioner's contention that his trial counsel should have requested a jury instruction on the requirement of corroboration of accomplice testimony, the undersigned previously found Petitioner has not demonstrated that the absence of the cautionary accomplice instruction rendered his trial so fundamentally unfair as to cause a denial of due process. Even if Petitioner's trial counsel's failure to request such an instruction could be considered professionally unreasonable conduct, Petitioner has not demonstrated that the error prejudiced his defense. Petitioner merely surmises that he may have been acquitted had the jury found Mr. Burris's testimony was not credible for lack of corroboration. Petition, at 10. However, as the OCCA found in Petitioner's direct appeal, Mr. Burris's testimony was corroborated by other evidence presented at the trial. Petitioner's presence in the garage where the methamphetamine manufacturing lab was discovered and

of all the circumstances prevailing at that time, and indulging a strong presumption that counsel's conduct fell within the "wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. 668, 689 (1984).

With respect to Petitioner's contention that his trial counsel should have requested a second preliminary hearing after the charges against him were amended, the undersigned has concluded that no fundamental unfairness resulted from any technical error in the Petitioner's pretrial proceedings or the failure to hold a second preliminary hearing after amendment of the charges. Hence, Petitioner has not shown that his defense counsel's failure to request a second preliminary hearing was objectively unreasonable professional conduct or that his defense was prejudiced by counsel's failure to request a second preliminary hearing.

With respect to Petitioner's contention that his trial counsel should have requested a jury instruction on the requirement of corroboration of accomplice testimony, the undersigned previously found Petitioner has not demonstrated that the absence of the cautionary accomplice instruction rendered his trial so fundamentally unfair as to cause a denial of due process. Even if Petitioner's trial counsel's failure to request such an instruction could be considered professionally unreasonable conduct, Petitioner has not demonstrated that the error prejudiced his defense. Petitioner merely surmises that he may have been acquitted had the jury found Mr. Burris's testimony was not credible for lack of corroboration. Petition, at 10. However, as the OCCA found in Petitioner's direct appeal, Mr. Burris's testimony was corroborated by other evidence presented at the trial. Petitioner's presence in the garage where the methamphetamine manufacturing lab was discovered and

his admissions concerning his participation in drug-making activities in the garage immediately before he was arrested provided significant evidence of his guilt. Petitioner has not shown that he was prejudiced by counsel's alleged error in failing to request a jury instruction on the necessity of corroboration of accomplice testimony.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court by   September 12th  , 2007, in accordance with 28 U.S.C. § 636 and LCvR 72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their respective right to appellate review of both factual and legal issues contained herein. Moore v. United States of America, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this   23rd   day of   August  , 2007.

*Gary M. Purcell*
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE